HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES E. ALLEN,

    Plaintiff,

v.

UNITED STATES POSTAL SERVICE,

    Defendant.

CASE NO. C10-5721 RBL

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

[DKT. #33]

THIS MATTER is before the Court on the Defendant US Postal Service's Motion to Dismiss and/or for Summary Judgment [ Dkt. #33]. Plaintiff Allen is a former USPS employee. He was terminated after he failed to report for work (and failed to explain his absence) for several months. He sued, asserting three claims[1]: hostile work environment, violation of the Family Medical Leave Act, and wrongful termination.

The USPS seeks dismissal of Allen's first and third claims because the government has not waived its sovereign immunity for such claims. It seeks summary judgment on the FMLA claim, arguing there is no evidence to support it.

---

[1] Allen's Response to this Motion indicates that he is also asserting a 14th Amendment Due Process claim, but he does not provide any evidence or argument in support of such a claim, and it is not in his Complaint.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 1

1   Allen appears pro se.  He argues that the government expressly waived its sovereign
2 immunity in the 1970 Postal Reorganization Act, 39 U.S.C. §401, and that his state law tort
3 claims against it are authorized by the Federal Tort Claims Act.  He argues that he was on FMLA
4 leave and that it was a violation of that act to terminate him.

## I. FACTUAL BACKGROUND

6   The facts of this dispute are not seriously in dispute, and are well-documented in the
7 record.  Allen began his employment with the USPS in 1997.  Prior to the incidents at issue, he
8 was a Distribution Operation Supervisor at the Processing and Distribution center in Tacoma.
9 On March 13, 2007, he got into a verbal confrontation with a fellow employee, Ron Schmidt.
10 Allen claims that Schmidt said, "If you were harassing me on the outside I would kick your ass."
11 Schmidt apparently claims he said, instead, "If anyone was harassing me as you're harassing me
12 I would kick their ass."  He also claims that Allen made a hand gesture like a gun and pointed it
13 at him.  Allen said at the time that he thought Schmidt's "gun" claim was "funny."

14   Allen took Schmidt's remark as a threat and reported it to his supervisor, Tim Wilson.
15 An investigation ensued, which concluded that though the words were spoken, there was no real
16 threat.  Allen worked near Schmidt (apparently without further incident) until June 28, 2008,
17 when Allen called in sick over an automated phone-in system.  Wilson sent an email and left a
18 voicemail asking Allen to provide medical documentation for the absence.  Allen first claimed he
19 did not have to bring "a G-D thing" but subsequently sent in a note from the VA dated June 28,
20 stating that Allen would be out until July 7.

21   Allen did not return to work on July 7.  On August 7, Wilson sent Allen a "duty status
22 letter" advising him that his absence was being charged as unscheduled sick leave, and
23 reiterating that he needed to contact management and provide medical documentation.  He also
24

provided Allen with forms for requesting FMLA leave.  Allen did not return the forms, and instead had delivered a note from Group Health stating that he was cleared to return August 14.  Allen did not return to work on that date.

On August 24, Wilson sent another duty status letter advising Allen that he was AWOL and again asking him to call.  He also again provided Allen notice of his rights under the FMLA and referenced the forms he had sent previously.  Allen did not call, did not return the forms and did not return to work.  Instead, on August 30, he responded in writing that Wilson did not have the right to ask for documentation.  His letter did not address or return the FMLA forms.  The same day, Wilson sent Allen yet another letter, this time asking for a response by September 7, and warning him that a failure to respond could lead to removal.  He asked again whether Allen needed FMLA leave.  Allen did not respond and instead continued to report that he would not be coming to work over the automated system.

On September 19, Wilson sent another letter advising of an investigative interview regarding his failure to show up for work since June 27, scheduled for September 25.  Allen did not attend the interview.  On October 3, Wilson sent Allen a notice of proposed removal, and informed Allen of his right to respond.

On November 2, Allen responded with a letter to Don Jacobus, the Senior Plant Manager and the person who would ultimately decide on his removal.  He referenced the March 13 incident and his concern that nothing had happened as a result of it.  He claimed that he began having unexplained headaches on June 20, and that he had been seeking help for them ever since.  He reiterated that he had been using the automated leave system, and claimed that he "did not know" whether his condition qualified him for FMLA leave.  He stated that his condition had been traced to sleep apnea, and that he was seeking help for it.

1    On November 5, Allen sent a letter to the VA expressing his concern that the American
2 Lake VA had not completed his FMLA forms, despite what he felt were assurances that they
3 would do so. [Dkt. #41; Ex. M]. The record does not reflect that this information was ever
4 provided to the USPS.

5    Allen met with Jacobus on December 4. He again claimed medical problems but did not
6 document them in any way. He did not reference FMLA leave or explain why he had failed to
7 communicate to his supervisor the reasons for his absence.

8    Allen has submitted evidence that on December 13 he requested FMLA leave from the
9 USPS FMLA Office [Dkt. #41; Ex. N] That evidence is in the form of letter from the FMLA
10 office notifying him that his "documentation indicates that you are not incapacitated by
11 condition, but rather that you will need time off for medical appointments." It also notified him
12 that "if at some future time this condition renders you unable to work, new FMLA certification
13 will be required that supports time off due to incapacity." *Id*.

14    By a "decision letter" dated January 8, 2008, Jacobus terminated Allen. [Dkt. #34; Ex.
15 18] The letter pointed out that Allen had not requested any leave since October 30, 2007, and
16 that he had never documented the medical reasons for (or otherwise explained) his continued
17 absence from work.

18    Allen appealed to the Merit System Protection Board, which held a hearing on June 10,
19 2008. The MSPB's Administrative Judge upheld the termination on July 16, 2008. [Dkt. #34;
20 Dkt. 19] The decision informed Allen of his right to further review by the Board, and of his right
21 to appeal to the Federal Circuit within 60 days. He did neither, and instead filed this lawsuit on
22 October 1, 2010.

Allen now claims that the March 13, 2007 incident triggered an Acute Stress Disorder that evolved into Post Traumatic Stress Disorder. [*See* Dkt. #41; Ex. V (Psychosocial Report dated July 9, 2012)]. This Psychosocial Report claims that Allen focuses his limited energy on "the injustices he suffered" at the Post Office, including "its inability to follow its own protocols," "the denial of the FMLA requested" and "the loss of 588 hours of sick leave." *Id*.

## II. DISCUSSION.

**A. Waiver of Sovereign Immunity.**

USPS seeks dismissal of Allen's Hostile Work Environment and Wrongful Termination claims under Fed. R. Civ. P. 12(b)(1) and (6), arguing that the government has not waived sovereign immunity on either claim.

A complaint must be dismissed under Fed.R.Civ.P.12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v. Tinnerman*, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986); *see* 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United States as a defendant). When considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983). A federal court is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated*

1  *Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Therefore, plaintiff bears the burden of proving the

2  existence of subject matter jurisdiction. *Stock West*, 873 F.2d at 1225; *Thornhill Publishing Co.,*

3  *Inc. v. Gen'l Tel & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

4        Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal

5  theory or absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v.*

6  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Review is limited to the content of the

7  complaint [and properly incorporated documents], and all allegations of material fact must be

8  taken as true, and construed in the light most favorable to the non-moving party. *Fed'n of*

9  *African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). Under *Bell*

10 *Atlantic Corp. v. Twombly*, a litigant cannot simply recite the elements of a cause of action to

11 avoid dismissal under this Rule. He must instead "provide the grounds of his entitlement to

12 relief, which requires more than labels and conclusions." 127 S.Ct. 1955, 1964-65 (2007). The

13 litigant must plead a claim that moves "across the line from conceivable to plausible." *Id*. at

14 1974.

15       USPS argues, persuasively, that while the government has waived immunity in a number

16 of instances for cases involving employment discrimination based on a protected characteristic,

17 including Titlve VII, the ADEA and the Rehabilitation Act, it has not done so for the claims

18 Allen asserts. Allen has not asserted a discrimination claim, at all, and certainly not one based

19 on a protected characteristic (such as race, disability, age or sex) and, even if he had, he failed to

20 pursue any administrative claim for relief for such a claim. Instead, he claims only that

21 Schmidt's comment and the USPS response to it constitute a "hostile work environment."

22       Allen claims that the government expressly waived its sovereign immunity in the 1970

23 Postal Reorganization Act, 39 U.S.C. §401, and that his state law tort claims against it are

24

authorized by the Federal Tort Claims Act. He also claims that the Court has jurisdiction over his *Bivens* –type Constitutional claim. But Allen has not brought an FTCA or a *Bivens* claim, As to the former, he did not pursue any administrative relief on a FTCA claim. *See* 26 U.S.C. §2675(a). And he has not sued any individual for allegedly violating his constitutional rights, as required by a *Bivens* claim.

And, even if he sought to do so now, the only proper course for a federal employee to pursue a claim based on "prohibited personnel practices" is a Civil Service Reform Act claim. *See* 5 U.S.C. §2302. As USPS argues, federal employees alleging employment related tort claims subject to the CSRA may not bring an action under the FTCA. *Kennedy v. United States Postal Service*, 145 F.3d 1077, (9th Cir. 1998). The CSRA similarly prohibits constitutional tort claims for money damages[2] against individual federal employees. *Saul v. United States*, 928 F.2d 829 (9th Cir. 1991).

Allen has not met his burden of establishing that the government has waived its sovereign immunity from the tort claims he seeks to bring. This Court therefore does not have subject matter jurisdiction over these claims are they are DISMISSED.

**B. FMLA Claim.**

USPS seeks summary judgment on Allen's FMLA claim (whether it is couched as a claim for interference with his effort to obtain such leave, or as a retaliation claim based on his efforts to obtain such leave), arguing that there is no evidence to support it.

Allen claims that he has plead that he was not required to specifically seek FMLA leave, and that his supervisor restrained and interfered with his exercise of his FMLA rights, and

---

[2] Allen's Complaint seeks $5,880,000 in punitive damages on his hostile work environment claim, $263,000 damages on his FMLA claim, and reinstatement and reimbursement for his forfeited sick leave, on his wrongful termination claim. He also seeks attorneys' fees and costs.

retaliated against him for seeking to exercise them.  He further claims that his supervisor's (Wilson's) "negative attitude toward him" was connected to Wilson's inability to objectively evaluate the information he received from Allen, and to the FMLA Coordinator's decision that Allen was not incapacitated and was entitled to only "intermittent leave [for medical appointments]."

Allen's Complaint does not allege that he had a serious medical condition (as that term is defined in the FMLA) in the summer and fall of 2007, and the evidence he has supplied —an evaluation done a month ago—certainly does not do so.  On the contrary, Allen was repeatedly asked to return FMLA forms and he failed to do so.  He was asked what medical condition prevented him from working for months on end, and he refused to provide any documentation or any reason at all.  Despite Allen's conclusory claim to the contrary, the FMLA does permit employers to ask for medical documentation.  29 U.S.C. §2613(a).  Such documentation must include information about the expected duration[3] of the condition.

Allen was repeatedly asked to provide some medical evidence supporting his claimed illness, and he instead provided cryptic notes describing headaches and sleep apnea[4], and stating that he would be able to return to work in a matter of days.  Indeed, though USPS and Wilson repeatedly asked him to tell them what was wrong, and when he might return, he refused.

Allen did talk to the VA about his medical issues in October (although there is no evidence that he relayed that information to USPS) and the VA apparently did not fill out the

---

[3] It should also be noted that FMLA leave is for a maximum 12 weeks, unpaid.  Allen left work on June 27 and did not return before he was finally terminated, roughly 30 weeks later.

[4] Allen's psychosocial report (which is not sworn and does not opine to a reasonable degree of medical certainty that he was seriously ill in 2007) does recite that he was diagnosed with the sleep apnea condition in 2002.

1  FMLA forms he asked them to.  He also made some sort of claim to the USPS FMLA

2  Coordinator in December—after the Notice of Removal—but there is no evidence that that was

3  reported to Wilson or Jacobus, either.  And the result of that review was that Allen was *not*

4  entitled to the continuous FMLA leave to which he now claims he is (and was) entitled. [Dkt.

5  #41; Ex. N]

6       In short, there is simply no evidence supporting Allen's claim that he ever sought FMLA

7  leave from the USPS, that he ever told them why he was not at work, and or that USPS or its

8  employees in any way interfered with Allen's (claimed, but wholly unsupported) efforts to do so.

9       For the same reasons, there is no evidence supporting Allen's alternate claim that he was

10  terminated for exercising or attempting to exercise his FMLA leave rights; he never did so.

11  USPS's Motion for summary judgment on Allen's FMLA claims(s) is therefore GRANTED and

12  that claim is DISMISSED with prejudice.

13       IT IS SO ORDERED.

14       Dated this 29th day of August, 2012.

                                                       Ronald B. Leighton
                                                       United States District Judge